Number 191386, Sandra Lopez-Lopez versus the Robinson School et al. Mr. Fagot, good morning. Good morning, Your Honors. May it please the Court, my name is Jose Fagot. I'm alongside co-counsel Manuel Lopez. We're appellant's counsel in the case being heard today before the Honorable Court. Your Honor, this case, Your Honor, excuse me, this case deals with two civil rights statutes, federal civil rights statutes under the Americans with Disabilities Employment Act. The case deals with a school teacher who all her life has worked as such and she, at that time the facts took place, she was teaching a special ed course under the Pathways Program of Appellee with Robinson School. This is particularly important in light of the facts which took place on September the 1st, 2015. And on to the record, on that particular date, Ms. Lopez was administering a social studies test when her immediate supervisor who is a co-appellee, I forget her name right now, but she is the, she was director of, Maritela, sorry, she was the, at that particular time, she was director of the Pathways Program which was a special program devised by the Robinson School, the appellee, for students with special needs and special learning disabilities as well. While the test was being administered, Ms. La Rio came into the classroom and asked Ms. Lopez for certain materials dealing with the test and grade books and she asked of Ms. La Rio, give me some time to finish the test and then I will give you the materials that you are requesting. That did not happen and this caused a little bit of disorientation among the students and some of them stood up during the test and started wandering around and Ms. Lopez wanted to control the classroom atmosphere and stood up. I don't want to get you off your story if you want to keep saying it, but ultimately we need to get to the question of how you meet the elements for the age discrimination claim. So you alleged three adverse actions for the age discrimination claim, which are the training, what are the other two? The training and she was also required to hand in grade books while other students were not, while other teachers were not allowed to, were not requested to submit their grades manually. They all did it on Edline, which is the automatic computer system. Don't you need to show that they were differentially treated because of their age? Yes. And what's the evidence that the other people, that it was all the younger people got to trainings or all the younger people got to turn it in or the younger people got this, whatever the third one was? That evidence is on the record is what Ms. Lopez testified in her deposition. But what is her basis for knowing what their age was relative to her? I think it's an admitted fact, Your Honor, that they were younger and she was the oldest of that group of teachers within the Pathways Program. As I understand the record, she has never been unemployed because of or suspended her pay or anything like that. Am I correct? Well, on the following day, Your Honor, Judge LaFleur, she was suspended. She has never... Prior to that date, you mean? No, no, since then. She's still employed now. Yes, yes. As we speak, Your Honor, she's still at... And there has been no interruption in her employment in terms of being paid. That's correct, Your Honor. She continues... Or else... She continues to be an employee and as a matter of fact, she has received the salary increases throughout her tenure. So what exactly is the allegation of discrimination here? Well, there's two. There's one under the ADA because Ms. Lopez was regarded as or perceived as having a mental disability. And there's the age claim, which Judge LaFleur alluded to. But what was done to her that was discriminatory? She was denied computer training? Yes. Not computer training. She was denied to be able to assist through professional seminars which took place outside of Puerto Rico. And they were all similarly situated with her in every respect but age? The other employees who got them? Yes, all the employees that... Does she identify what the trainings were? Yes, they were basically professional seminars that took place outside of the island. And does she name them or give dates for them or identify who got to go? Well, she alleges in a definite testimony, she states all those that she didn't go, all the other ones went. And does she name who went and which ones? I believe she did. And it's also a stipulated fact, Your Honor, somewhere on the record that that is so. That she was denied or she was not allowed to go to the training seminars outside of Puerto Rico. But she was allowed here in Puerto Rico to take those seminars which the other ones did. The district court said that's not an adverse action. That's your best claim that her employers, as a condition of her employment, forced her to go to a psychiatric hospital. Yes, well, as... And under McDonnell Douglas, it may be that that would make out a prima facie case of discrimination. That's right, Your Honor. But then there are the other issues in McDonnell Douglas, whether that was a legitimate requirement by the employer given her the suicide threats and her nervous breakdown. Why do you contend that that wouldn't be a legitimate action by the employer under those circumstances? Well, the fact is, you know, going back to the September 2nd date, and the fact that she was taken, she was always under the impression that she was taken to a counseling center, not to a psychiatric hospital. And as we further say in our briefs... No, but I don't think you're addressing my question. I'm saying, let's assume that you made a prima facie case of discrimination under the Americans with Disabilities Act. Yes, sir. Why isn't it legitimate that the employer under those circumstances would force her to go to a psychiatric hospital given her suicide threats and her nervous breakdown? Okay, well, we understand that the ADA was violated because prior to doing this, to taking her to a psychiatric hospital, there was no type of psychiatric evaluation done of her. On the payroll of Robinson, there were two psychologists. They did not evaluate Ms. Lopez before taking her to a psychiatric hospital. And on top of that, they did not conduct any type of reasonable accommodation that would have eliminated any type of significant risk that could have happened to Ms. Lopez or to the students or to other co-employees. That was not done. The direct threat analysis which... It's not a direct threat point. Okay. This is a question of whether it was discrimination based on her disability or whether it was a response to her conduct. Right. It was based on... That's not a direct threat point. Direct threat is a defense once you otherwise have established it was discrimination based on a disability. Right. This is she just manifested conduct. Right. In light of that conduct, they took an action. What indicates that is discrimination based on a disability? Well, because they considered the disabled by forcing her to go to a psychiatric hospital, Your Honor. And they didn't allow her to continue working. And they conditioned her employment upon her going to seek treatment at a psychiatric hospital. How could that not be a reasonable response by an employer under those circumstances? Well, it might seem to be reasonable at first to take her to a hospital to seek care. But once a patient or an individual, I shouldn't say desire of not to seek or not to have medical treatment, whether it be psychiatric or otherwise, and it's cited in our brief, there is a constitutional right to deny treatment. But if, Your Honor, I would be asking the question, what would the employer find to be a question regarding to that? Okay. Well, I'm not a psychiatrist. But if you were to ask me and I'm the employer, I would have done alternative measures, less drastic measures than guiding her under rules to go to a psychiatric hospital. I would have asked her to please attend a emergency room hospital facility, which is right in front of the... They took her to the wrong hospital? I think they took her to the wrong hospital, yes. Okay. And not only that, she was admitted against her will. I guess I'm just trying to understand how the claim works as you understand it. Sure. The fact that they took her to the wrong hospital relates to what with respect to the I don't think they took her to the wrong hospital. I thought you just said they did. Well, the thing is they did it under a ruse. If she was allowed to go on her own volition to a hospital and seek treatment, that's fine. But once she manifests there that she doesn't want to get treated, the employer conditions her employment on obtaining treatment. I guess I'm just not clear. What can the employer do in compliance with the ADA in your view? Well, first of all, I would seek counsel from a psychologist. They're on the school payroll. See what do I have to do and have the individual, in this case Sandra, be evaluated by them to see what the correct course of action is. Not take her to her hospital and then after she manifests the intent that she doesn't want to be hospitalized, the headmaster, Mr. Hildebrand, signs an authorization form for her to get admitted and be administered anti-psychotic medication when this individual did not have her power of attorney nor anybody else at the province. So that's where the violation of the ADA comes into play because it conditioned her to seek treatment when at that particular point in time there wasn't a reasonable medical or objective evidence upon why to take her to a facility or a psychiatric facility. Thank you. Ms. Alvarez, good morning. Your honors, may it please the court, my name is Maralisa Alvarez Sanchez. I am counsel for defendant appellees, the Robinson School and Maria Teresa Laredo. To address various of counsel for appellant point, I would like to go to the trainings that Judge Barron referenced, but first I would like to get to the issue he raised about taking her to Capistrano. One thing that the record is clear is that she was not forced to go to Capistrano. There is record evidence in the form of documentary evidence that she wrote for both at the time and a month after she was taken to Capistrano in which she said that she agreed to go to Capistrano. She separately also says that they conditioned her employment on it now. Yes, but she says that now, but she didn't say it at the time. The jury could disbelieve her, but on summary judgment, there is contradictory evidence in the... that she would have knowledge of. But she didn't explain why she contradicted herself. You could raise that with the jury and the jury might believe you, but why does that show that you get summary judgment? Because in addition, taking her to Capistrano was not an adverse employment action. What they did was take her, she had a nervous breakdown. Not an adverse employment action, forcing your employee to go to a psychiatric hospital? They put her in a car. They took her to get help. They actually... she went voluntarily. She said she voluntarily agreed to go. Once there, it was the hospital that admitted her. How could it not be an adverse employment action to compel the employee on pain of being discharged to go to a psychiatric hospital? That makes no sense. But there was no evidence of that. She didn't say that what specific... the head of school told her. She just made a conclusive allegation years after, a year after the fact. Put that aside. Assuming we think that there's enough evidence to create a dispute as to whether her employment was conditioned on going. One argument I guess you're going to make is that even if they conditioned her employment on going, it's not an adverse action. Assuming we didn't agree with that, I take it implicit in the argument you were making, Judge Dyke, is the argument that they weren't doing it because it was... because she was disabled? No, it was a reasonable reaction. And how does that fit into the McDonnell-Douglas increase? So we would have... they regarded her as disabled because of the breakdown. They conditioned her employment on her getting this invasive treatment. The invasive treatment would be adverse. So then you go to the legitimate non-discriminatory reason, correct? Because after you make a prima facie case, the burden shifts to the employer to produce a legitimate non-discriminatory reason. And what is a legitimate non-discriminatory reason? Is that you had somebody who had a nervous breakdown, as she herself described, where she threatened to kill herself, where her emergency contacts... But the problem is that just... I'm having difficulty. That seems to merge with the regarded her as disabled. Usually the legitimate non-discriminatory reason has nothing to do with the disability. What you're saying is the reason they acted. I'm not saying you're wrong. It's just the puzzle the case presents. The reason they acted is that they regarded her as disabled. But then any employer who takes an employee to get health care regards... That's the precedent that that conclusion would set. I get that, but I'm trying to figure out if you can give me some help as to how one would resolve the conundrum. But if you go to the legitimate non-discriminatory reason, is that she had a temporary nervous breakdown. She didn't have... In addition, she didn't have... The school didn't have anybody who could come and get her. Because it is on the record, and it is undisputed, that they contacted her emergency contacts. Because that would be the next reasonable step. You're having somebody that has a problem at work. You say, well, this person can't take care of themselves. Let's contact their emergency contacts to come and get them. That is a reasonable response. And it is on the record, that is what Robinson did. Robinson contacted her two emergency contacts, then answered the phone and said, I'm sorry, I'm not available to help her. She didn't have any other family or friends that the school knew of. That is undisputed. So what is the school to do? The school, as opposing counsel says, the school talked to its school psychologist, who is, it is undisputed, was not at the school at the time. This took place 4 or 5 p.m. The school psychologist said, you know, why don't you call Capistrano and see what they recommend that you do? Next step, which is also undisputed, Robinson calls Capistrano. Capistrano says, they said, we have this situation. Capistrano says, come and bring her in. So that is what the school did. In terms of the decision of admitting her to the hospital, that was on Capistrano. And she admits as much, because she says in her pleading before the court, which are on the record, that it was Dr. Angel Alvarez and Dr. Melvin Santoni who made the decision to admit her. So what Robinson did was take her to the hospital after it had called the hospital, explained the situation. And they told her, they told them, bring her here so we can evaluate her. That is what they did. Now, to say that Robinson regarded her as disabled merely for taking her to a psychiatric hospital opens a dangerous precedent that would actually, I think, inhibit employers from even calling 9-1-1, for example. Because if you call 9-1-1, then you're liable to say, oh, well, if I call 9-1-1, they might regard me as disabled because the person was taken to get help. And I know that's an extreme example. Are you saying we should rule that they did not regard her as disabled? Yes, I'm saying you should rule that taking her to Capistrano is not an adverse employment action. But in the next step, even assuming it was, there's no pretext to establish that the legitimate non-discriminatory reason for taking her to Capistrano was a pretext for disability discrimination. It was a reasonable response to the situation. And there is no evidence that taking her to Capistrano was arbitrary or was pretextual. There is no evidence that Robinson didn't believe its own reasons for taking her to Capistrano, which is, after all, the pretext analysis, is whether the employer believed its own reasons. That is the focus on pretext. And she hasn't established any record evidence to establish the contrary, that Robinson didn't believe its own reasons. There's no inconsistencies. There's no impossibilities from which this court or the district court could correctly infer that this was a pretext for disability discrimination. Now, is there any other questions on that point? I would like to go to the issue that the trainings that were raised by Judge Barron. I think it's important to establish that she was provided trainings within Puerto Rico. So her dispute, or her issue, is that she was not provided trainings outside of Puerto Rico. But to Judge Barron's questions, there is no record evidence as to which trainings were not provided, their contents, their location, the dates, or how not taking her to these trainings somehow adversely impacted her employment. For the first time before this court, she alleges that they somehow affected her employment prospects. But there is no record evidence from which the court conferred that those trainings affected. And what's your view on the other two adverse actions she alleges with respect to the AIDS discrimination claim? The other, she also alleges that she was required to turn in grades manually. That is not a materially adverse employment action. Under the adverse employment action standard, there has to be an allegation as to that the adverse employment action affected the material, materially affected the plaintiff's employ. Even assuming that that's true, there's no record evidence as to how supposedly turning in grades manually affected her. But there is record evidence is that she actually had more prep periods than any other of these teachers. Is there record evidence that she was the only one who was required to do it manually? No, Your Honor. No, there was no record evidence to that effect. There was, it's a purely speculatory, conclusory allegation on their part. In fact, What is she, what is the testimony on that? She says, She does, she says, she says she doesn't know what the other teacher's schedule is. She doesn't point to specific teachers which supposedly had, were required to turn in grades manually. And in fact, the truth is that these other younger teachers that she alleges had less prep periods. And a prep period is a period in which you don't have to teach a class. So you have more time for administrative tasks. She had more prep periods than any of the other teachers she complained of. So she had more time to, even assuming that these were, this is somehow an adverse employment action, she had more time to take care of these tasks than the younger employees. So that which further defeats her allegation that she was somehow treated differently because of her age. Now, so, and then going lastly, she has the trainings and the grades, and there is no other adverse employment action on which she can anchor her age discrimination claim. In fact, during her deposition testimony, she, when questioned as to the basis for her age discrimination claim, what she says is that the teachers were treated differently, not because of her age, but they were supposedly friends with Maridere, LaRue. Well, I mean, even assuming that's true, how is that age discrimination? It could be somehow nepotism. It could be cronyism as this court has had before it, but that doesn't mean it's discriminatory because of her age. So she herself admits in the deposition that she does not have any evidence to support an age discrimination claim. So, and that's the time I have. So unless you have any other questions, I would submit the district court acted properly in dismissing her age and disability discrimination claims and her retaliation claims because there was no pretext as to that the reasons stated by Robinson were a pretext for retaliation. Thank you. Thank you, your honors.